BEER, Judge.
Plaintiff-appellant, Hersey C. Ridenour (hereinafter, “Ridenour”), was found to have been injured in the course and scope of his employment with Kaiser Aluminum & Chemical Corporation (hereinafter, “Kaiser”) on September 30, 1971 and was awarded total and permanent workmen’s compensation benefits at the then applicable rate of $49.00 weekly for 500 weeks.[1]
In making the award, the trial court allowed defendant-appellee, Kaiser, a credit of $49.00 per week for 104 weeks reasoning that such credit was in accordance with the particular contractual relationship existent between the litigants.
The collective bargaining agreement between Kaiser and Local 13000, The International Union of District 50 (hereinafter, “Local 13000”), provided that the injured Ridenour, a member of Local 13000, and thus covered by the agreement, would receive a weekly payment of 28 times his hourly rate of $4.63 for two years (104 weeks) from the date of injury. These payments were made at the rate of $129.64 per week. At the end of 104 weeks Kaiser *303 continued its payments to Ridenour at the rate of $49.00 per week.
Prior to the pertinent dates, Kaiser had made certain fiscal and administrative arrangements, including the maintenance of certain insuring agreements, to meet its collective bargaining contractual obligations to the members of Local 13000 at no cost to any of them.
The clear-cut issue presented to us for adjudication by able counsel for Local 13000 and Kaiser is this:
Was the trial court correct in its interpretation of the facts of this case as they relate to the collective bargaining agreement and the applicable provision of the workmen’s compensation statutes which resulted in the trial court’s allowance of the credit?
We hold that it was and affirm the judgment.
The collective bargaining agreement did not violate LSA-R.S. 23:1033[2] by providing that:
“In case an employee makes claim for nonoccupational sickness and accident benefits and receives benefits thereunder and also makes claim for Workmen’s Compensation and receives benefits thereunder, he shall make restitution of the appropriate portion of the non-occupational sickness and accident benefits.” Article 34, Section lB(2)(c) (Emphasis ours.)
Indeed, this particular provision of the agreement contemplates the specific situation that exists in this case. The contract between the parties was obviously hammered out in the heated caldron of the collective bargaining process, skillfully conducted both by Local 13000 and Kaiser. The bargainers were doubtlessly aware of the unequivocal language of LSA-R.S. 23:1033 and the cases following. Local 13000 properly wished to provide the best possible financial security for its injured members; Kaiser rightfully sought to take care of both its statutory obligations and collective bargaining commitments in a procedural arrangement that would be acceptable to the union and not violative of the workmen’s compensation statutes. Both apparently felt that to provide for an offset, as such, with respect to compensation payments, was to possibly enter the danger zone of litigation. However, the concept of restitution could accomplish the intended collective bargaining result and (hopefully) avoid the litigious pitfall with which we are now, nevertheless, concerned.
At any rate, the important point is not the mechanical method employed to accomplish the payment to the injured Ridenour of $129.64 per week for 104 weeks and $49.00 per week for 396 weeks thereafter; nor is it the fact that Kaiser’s total obligation under the Workmen’s Compensation Act was to pay $49.00 per week for 500 weeks; nor is it the fact that Ridenour would have gotten $129.64 per week for two years even if he had been injured away from the job. What is important is that the binding agreement between the parties specifically dealt with the particular issue here involved. For what other reason could Article 34, Section lB(2)(c) have been incorporated into the collective bargaining agreement? We can conceive of none.
We would, of course, nullify that portion of any agreement between employer and employee that directly or indirectly relieved the employer, in whole or in part, from his statutorily imposed responsibility. Any wording in the collective bargaining agreement, however subtle or unique, which, in any way, adversely affected the permanently and totally disabled Riden-our’s right and ability to receive $49.00 per *304 week for 500 weeks would be struck down by us. But that is not what has taken place. The sum and substance of Riden-our’s statutory and collective bargaining relationship with Kaiser was this:
If he was injured on the job and it was determined that he was, as a result, permanently and totally disabled within the applicable provisions of the Workmen’s Compensation Act he would receive, after doing the arithmetic required by the restitution provision of the collective bargaining agreement, $49.00 per week for 500 weeks and, in addition, $80.64 per week for the first 104 weeks (two years). That $80.64 figure is arithmetically arrived at by the restitution of $49.00 per week from the $129.64 per week paid during each of the first 104 weeks of disability — all in accordance with the collective bargaining agreement between the parties.
We agree with articulate counsel for appellant that, as he so well states, the very nature of the collective bargaining agreement is quid pro quo. It is the overall mutual - consideration which passes between the particular parties to a contract to render it valid and binding. In adjusting, by the restitution provision, the net amount that would be paid to Ridenour during the first 104 weeks (or two years) of his disability, the parties doubtlessly gave or took on other related or unrelated bargaining issues. But the prohibition clearly set out in LSA-R.S. 23:1033 was not violated then in principle nor now in practice.
Counsel for appellant seeks support from our holding in Byrd v. Kaiser Aluminum and Chemical Corporation, La.App., 314 So.2d 448 (Decided on June 11, 1975), but that decision turned on a credibility call and did not reach the issue raised here.
No useful purpose is served by a discussion of prior holdings in somewhat similar but distinguishable circumstances from those existent here. The record supports the conclusion reached by the trial court. We affirm the judgment of the district court; costs of this appeal to be paid by appellant.

Affirmed.

. This finding is not appealed and is final. The sole issue in this appeal is the validity of the credit allowed by the trial court.

. “No contract, rule, regulation or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this Chapter except as herein provided.”